JANUARY TERM, 1880.            243

Cook vs. The City of Racine and another.

COOK vs. THE CITY OF RACINE and another.

*April 3 — April 20, 1880.*

EQUITY: CITIES: REVERSAL OF JUDGMENT.   *(1) Duty of city in letting contract for sidewalks.   (2) Judgment in equity reversed on preponderance of evidence.*

1. Where a city charter does not require contracts for building sidewalks at the expense of adjoining lots to be let to the lowest bidder after advertising for proposals, although such contracts may be made by private agreement with the city, they must be fairly made, at reasonable prices, with due regard to the lot-owner's interests, or equity will relieve against them.

2. This court being satisfied, by a clear preponderance of evidence, that the building of a sidewalk in front of plaintiff's lot was let at an unreasonably high price, in disregard of plaintiff's rights, and that the sum which she ought to pay is definitely ascertained by the proofs, a judgment affirming the assessment is reversed, with directions for a judgment restraining the collection of such assessment in case plaintiff, within a reasonable time to be specified, shall pay the proper amount, with interest from the time when the collection would have been enforced but for the temporary injunction granted herein.

APPEAL from the Circuit Court for *Racine* County.

The common council of the defendant city passed an order for building a sidewalk contiguous to the lot of the plaintiff, described in the complaint. Such order was duly published, and a notice requiring the plaintiff to build the sidewalk within a specified time, as required by the city charter, was duly served upon her. The plaintiff failed to construct the sidewalk as required, and the common council, by resolution, authorized the aldermen of the ward in which the plaintiff's lot is situated, to let a contract for its construction. The aldermen thereupon let the contract to the defendant *Morey*, at the rate and price of forty cents per lineal foot. *Morey* built the sidewalk, a certificate of a special assessment on the plaintiff's lot for the contract price was issued to him, and the amount thereof was assessed against the lot in the tax roll of the city

for 1878. This action was brought to have the assessment declared void and to enjoin the collection of the tax. The facts above stated are established by the pleadings, proofs and findings of fact by the court. It is alleged in the complaint that forty cents per foot was an unreasonable and exorbitant price for building the sidewalk; that it was worth only from fifteen to twenty cents per foot to build it; and that one Albert G. Knight applied to the aldermen who let the contract, before they let it, for opportunity to bid for the work, and offered to build the sidewalk for twenty-five cents per foot. It appeared in evidence that Mr. Knight held a mortgage on the lot in question.

The principal contention on the trial was upon the above allegations. The evidence is sufficiently stated in the opinion. In respect thereto the court found as follows: "9. That the charge for building said sidewalks, to wit, forty cents per lineal foot, is not exorbitant or unreasonable. 10. That the allegation of plaintiff that one Albert G. Knight had offered to build said sidewalks, before the letting of said work by contract, at a less sum than forty cents per foot, or at the sum of twenty-five cents per foot, is not proven." Judgment was entered declaring the assessment and tax valid, and in effect denying the relief demanded in the complaint. The action relates, also, to another tax for the cost of a sidewalk on another street, contiguous to the plaintiff's lot, and that tax was adjudged void. The foregoing statement of the case has no reference to the proceedings in respect to the last-mentioned sidewalk, which are of no importance on this appeal.

The plaintiff appealed from the judgment.

*John T. Fish*, for the appellant.

*John B. Winslow*, for the respondents.

LYON, J. The charter of the city of Racine does not require that contracts for building sidewalks shall be let to the lowest bidder, after advertising for proposals therefor. Hence such

contracts may be made by private agreement between the city and the person contracting to build them.   But, on general principles of law, such contracts must be fairly entered into at reasonable prices, and with due regard to the interests of the owners of lots chargeable with the cost of the improvement, and, if not so made, courts of equity will give relief to such owners on equitable principles.   The evidence is overwhelming that, before the contract was let to the defendant *Morey*, Mr. Knight proposed to the two aldermen having the matter in charge, to build the sidewalk in question for twenty-five cents per foot, and that the price named would have been a liberal compensation for building it.

That Mr. Knight had an interview on the subject with each alderman, separately, before the contract was made with *Morey*, is undisputed.   Mr. Knight testified to his proposal in those interviews to do the work at twenty-five cents per foot, and three witnesses swear to a subsequent conversation between him and one of the aldermen in which the proposal was substantially admitted.   This conversation is not denied. There are other facts in the case, which we forbear to state, that strongly corroborate Mr. Knight's testimony.   Opposed to this there is nothing but the statement of the aldermen that they did not recollect that the proposal was made.   The evidence to prove the proposal is direct, positive and satisfactory; the evidence to disprove it is purely negative.   The positive proof must prevail.   *Ralph v. Railway Co.*, 32 Wis., 177.

On the subject of value, Mr. Knight testified that twenty-five cents per foot was a good, fair price, and would yield a profit to the contractor.   Dr. Lukes, an alderman, testified that the fair value was from twenty to twenty-two cents per foot; and on cross examination he stated that in the same year he let contracts to build similar sidewalks in his ward at twenty-two cents per foot, and that the contractor could make a profit on the job at that price.   The only testimony which impeaches the statements of Knight and Lukes in the slight-

est degree, is that of the two aldermen who let the contract to *Morey;* one of whom merely stated that the city had been in the habit of paying forty cents per foot, and the other that he knew of no case, except the one mentioned by Lukes, where sidewalks had been let for twenty-five cents per foot.

There is nothing in the record which tends to impeach the credibility of either Knight or Lukes, or which raises even a suspicion that the former was not perfectly responsible for the performance of the contract had it been awarded to him. Being satisfied, by what we deem a clear preponderance of proof, that the work was let at an unreasonably high price, in disregard of the rights of the plaintiff, we cannot uphold the special assessment for the excess above a fair price for the work. The plaintiff should not be relieved, however, from paying a reasonable sum for the improvement. She is in a court of equity, asking the interposition of the court to restrain the collection of the assessment by injunction. The sidewalk has been constructed by order of the common council, her property has been benefited by the improvement, and the sum which she ought to pay for it is definitely ascertained by the proofs.

It is not thought necessary to pass upon the question, which was considerably argued, whether it is competent for the common council, under the city charter, to delegate to the aldermen of a ward power to make contracts like that under considera-tion. The determination of that question either way would not, we think, affect our judgment on this appeal. Doubtless the safer practice would be for the council to withhold from the aldermen, or any other officer of the city, the authority to close a contract on behalf of the city until the proposed terms of it have been submitted to and approved by the council.

The judgment of the circuit court, so far as it affects the assessment held to be valid, must be reversed, and the cause will be remanded with directions to that court to grant the relief demanded in the complaint, if, within some reasonable

time to be specified by it, the plaintiff pay into court on account of such assessment, for the use of the holder of the certificate, a sum equal to twenty-five cents per lineal foot, and interest thereon at seven per cent. from the time the lot would, but for the injunction, have been sold for non-payment of the assessment. Failing such payment, the complaint in respect to such assessment, so held valid by the circuit court, must be dismissed.

*By the Court.*— So ordered.