ANDERSON, Respondent, vs. HORLICK's MALTED MILK COMPANY, Appellant.

*January 7—January 26, 1909.*

*Dismissal and nonsuit: Voluntary nonsuit after verdict: Rights of adverse party: Trial: Instructions to jury: Necessity of requests for instructions: Evidence: Positive and negative evidence: Appeal and error: Review: Erroneous exclusion of evidence.*

1. The right to a judgment on the verdict or to appeal from a denial thereof having become fixed by the verdict, it cannot rightly be taken away by a voluntary discontinuance.
2. A new trial having been granted, even if the right to discontinue the action is thereby revived, such right is not absolute, but requires the assent of the court.
3. Where as the result of a full trial a party, on the face of the record, is entitled to judgment, and a stay of proceedings has been granted to give reasonable opportunity for the preparation and service of appeal papers, the opposite party and the court having full notice that it is intended in good faith to take an appeal, judicial assent to a discontinuance sought with the evident purpose of superseding the right of appeal should be withheld.
4. The giving of instructions to the jury applicable to the evidence, good as far as they go, with no further instructions asked by way of explanation or otherwise, is not prejudicial although the jury may have gone astray.
5. Evidence merely negative in form, in contradiction of positive evidence, does not call for explanation to the jury as regards its definition or comparative weight.
6. Where the evidence upon the negative takes the form of recollection and positive denial based thereon, it is affirmative, in effect, rather than negative, under the rule for comparative weight of the two classes of evidence, notwithstanding its negative form.
7. In an action for personal injuries, the controversy being as to whether a bell or other signal was sounded or not, there being positive evidence that it did, and a witness having testified that he did not hear the bell or signal sounded, a situation is presented calling for instructions on the question of positive and negative evidence and their comparative weight.

8. A phrase of an instruction to the jury: "Where two witnesses directly contradict each other, and the veracity of neither is impeached, *the presumption of truth* is in favor of the witness who swears affirmatively," while disapproved for use of the words "presumption of truth," in connection with the other parts of the charge is *held* not to have misled the jury. TIMLIN, J., dissents.

9. Where there was positive evidence that an elevator bell rang and that the witness could have heard it, but he testified that he did not, it is harmless error to sustain objections to questions involving mere opinions as to the witness's ability to hear the bell which were as capable of being formed by the jury as the witness.

10. In an action for personal injuries received by falling down an elevator shaft, a question of the special verdict inquiring as to whether the entrance to the elevator was *reasonably* guarded, stated in the opinion, is *held* to have substantially covered the calls of sec. 1636j, Stats. (1898), requiring all elevators to be "*securely* guarded and fenced."

APPEALS from orders and from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Reversed.*

Action to recover for personal injuries claimed to have been caused by defendant's negligence.

The plaintiff was injured by going through the open door of an elevator shaft when the car was not in place and falling down the shaft. The negligence complained of, made the subject of inquiry on the evidence, was as indicated in the verdict. The jury found as follows:

"(1) Did the signal bell in the elevator fail to ring when the elevator moved upward from the first floor immediately before the plaintiff fell down the shaft? *A.* No.

"(2) If you answer the first question 'Yes,' then was such failure to ring caused by defect or want of repair? *A.* ——.

"(3) If you answer the first and second questions 'Yes,' could the defendant in the exercise of ordinary care have discovered such defect or want of repair in time to have remedied the same before the accident? *A.* ——.

"(4) If you answer the first, second, and third questions

'Yes,' was the defendant negligent in failing to put said bell in proper repair before the accident? *A.* ——.

"(5) Did the defendant negligently fail to reasonably guard the entrance to the elevator at the scratching room floor at the time of the accident? *A.* No.

"(6) If you answer the fourth and fifth questions, or either of them, 'Yes,' was such negligence the proximate cause of plaintiff's injury? *A.* ——.

"(7) Was the plaintiff guilty of any want of ordinary care which contributed to produce his injury? *A.* No.

"(8) If the court shall determine that the plaintiff is entitled to recover, in what sum do you assess his damages? *A.* $2,500."

There was a motion for a new trial, granted because of supposed harmful error in the charge and such error in rulings on evidence. After such granting, defendant, upon due notice, applied to the court for an order fixing the amount of an undertaking to stay proceedings pending the result of an appeal from the order to this court. The appropriate order was made, but before the time limited for appealing expired the court, without notice to defendant's counsel, on application of the plaintiff's counsel, rendered judgment dismissing the cause without prejudice. Defendant seasonably moved the court for a vacation of such judgment, which motion was denied. An appeal was then taken from the first order and a second appeal from the judgment. and from the second order.

For the appellant there was a brief by *Aarons & Niven,* attorneys, and *Quarles, Spence & Quarles,* of counsel, and oral argument by *J. M. Niven* and *W. C. Quarles.*

*Wallace Ingalls,* for the respondent.

MARSHALL, J. Sec. 2856, Stats. (1898), provides that: "The plaintiff shall have no right to submit to a nonsuit after the argument of the cause to the jury upon the testimony shall have been concluded or waived." It will readily be seen, without discussion, that appellant was entitled, as mat-

ter of right, after the verdict was rendered, to have the question of its right to judgment thereon determined by the trial court and, if necessary, by this court. It is quite likely that the learned trial court supposed that, a new trial having been granted, the case stood as regards the right of discontinuance the same as before it was submitted to the jury. The right to judgment upon the verdict or to appeal from a denial thereof became fixed upon the verdict being rendered and could not rightly be taken away by a voluntary discontinuance. Moreover, if the right, so called, of discontinuance was revived by the order for a new trial, still it was not absolute. An application in that regard required assent of the court, so far as judicial action was necessary to save the rights of the adverse party from being unduly prejudiced. *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 233, 82 N. W. 158. The notion that a plaintiff may, after bringing the defendant into court and compelling him to submit to the disturbances incident to the formation of issues and preparation for trial, under all circumstances, discontinue, being liable only for taxable costs, regardless of the situation in which it may leave the adverse party, is all wrong, as suggested in the case cited.

True, the privilege of discontinuance is so commonly granted, within statutory limitations, that only in rare instances would any effort to prevent it be effective. The granting, generally, is as matter of course. So it is commonly spoken of as a right, but it is not a right absolute, as before indicated. It is to be granted or withheld according to the justice of the situation, which might be such as to render assent an abuse of discretion. Such was the case here.

As the result of a full trial, appellant, on the face of things, was entitled to judgment. Nothing stood in the way till the adverse ruling of the trial court after verdict on questions of law. A stay of proceedings being then granted to preserve the *status quo* pending an appeal, and to give

reasonable opportunity for the preparation and service of appeal papers, and the amount of the bond to stay proceedings till the termination thereof having been duly fixed, and respondent's counsel and the court having full notice that defendant intended in good faith to challenge the order for a new trial, it was clearly wrong for plaintiff to have judicial assent to a discontinuance sought with the evident purpose of superseding the right of appeal. We have no hesitancy in holding that such action was highly improper. It is not thought the learned trial court committed the error, conscious that it was within discretion to grant or refuse the discontinuance. It is supposed the thought must have been that plaintiff was entitled as matter of right to dismiss his action.

The foregoing brings us to consider the supposed errors of law which led to granting the new trial.

The first of such supposed errors is that the court improperly instructed the jury on the subject of positive and negative evidence.

There was no explanation to the jury as to what constitutes negative evidence, within the rule as regards the comparative weight between such and positive evidence, and none was requested. Without such request, if there were a situation legitimately calling for an application of the rule, and it was properly phrased, there was no error. It is familiar law that, if instructions are given applicable to evidence, good as far as they go, and no further instructions are asked, and yet, for want thereof, by way of explanation or otherwise, the jury may have gone astray, the losing party is remediless. The prejudice, if any, is to be regarded as chargeable to fault of the losing party. *Cook v. Racine,* 49 Wis. 243, 5 N. W. 352; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837; *Taylor v. Seil,* 120 Wis. 32, 97 N. W. 498; *Pumorlo v. Merrill,* 125 Wis. 102, 114, 103 N. W. 464; *Coppins v. Jefferson,* 126 Wis. 578, 585, 105 N. W.

1078; *Van de Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 112, 106 N. W. 805.

True, evidence merely negative in form in contradiction of positive evidence does not call for application of the rule under discussion. For instance, testimony that the bell in the elevator did not ring, contrary to the evidence that .it did ring, is negative in form but is an affirmation of fact that the bell did not ring. It is as affirmative as the evidence that the bell did ring. One affirms that the bell rang; the other that it did not. The same would be true in case of a witness, contradicting another who testified positively to seeing a certain act, testifying that it did not occur.

It is not to be wondered at that there is some confusion of understanding on this subject. In *Kelly v. Schupp*, 60 Wis. 76, 18 N. W. 725, in contradiction of positive evidence of a witness that an alleged agreement was made, the adverse party testified just as positively that it was not made. The court charged the jury that such negative testimony, in form, was not negative within the rule under discussion, and on the appeal this court said: "It clearly was," referring to *Ralph v. C. & N. W. R. Co.* 32 Wis. 177. That case is merely to the effect that when a person testifies positively in form that an alleged transaction did not occur under such circumstances that it amounts to no more than that he does not recollect of any such occurrence, his testimony is negative evidence within the rule, notwithstanding the positive form. Later, in perfect harmony with *Cook v. Racine*, *supra*, and many other cases in this court and elsewhere that mere want of recollection is negative testimony within the rule, the court decided that an assertion, as from recollection, that a thing affirmed on one side to have occurred, did not occur, is not such, but on the contrary is positive evidence. That was expressly held in *Elkins v. Kenyon*, 34 Wis. 93; *Sobey v. Thomas*, 39 Wis. 317; *Shekey v. Eldredge*, 71 Wis. 538, 37 N. W. 820; *Joannes v. Millerd*, 90

Wis. 68, 62 N. W. 916; *Alft v. Clintonville,* 126 Wis. 334, 105 N. W. 561. In the latter case it was said:

"The mere form of the question put to the witness does not always determine whether his answer shall be regarded as positive or negative testimony." "Thus it often happens that testimony which is negative in form may be really affirmative in essence and effect, within the real meaning and purpose of the rule."

So it is apparent, as suggested in *Joannes v. Millerd, supra,* that the very valuable rule under discussion for weighing evidence is liable to be prejudicially misused if the real character of negative evidence, contemplated thereby, is not understood. It relates only to evidence of a witness who had opportunity to see an occurrence, testified by some other witness to have occurred, that he did not see it, or of one who had opportunity to hear or know of an occurrence, testified positively by some other witness to have happened, that he did not hear it or recollect it. When the evidence upon the negative takes the form of recollection and positive denial based thereon, it is affirmative, in effect, rather than negative, under the rule for the comparative weight of the two classes of evidence, notwithstanding its negative form.

In the light of the foregoing it will be seen by reference to the evidence in this case that a situation was presented to the trial court calling for application of the rule mentioned. The controversy being as to whether the elevator bell was sounded or not, after plaintiff stepped back from the elevator opening to get his truck, there having been positive evidence that it did—he testified substantially like this: I did not hear any bell ring. I did not hear any warning when I was backing up into the elevator shaft. I say the bell did not ring because I did not hear it. That is all I know about it.

The instruction given is as follows:

"It is a general rule of evidence that affirmative or positive evidence is stronger than negative evidence. In other

words, that the testimony of a credible witness that he heard the elevator bell ring when the elevator moved upward immediately before the happening of the injury to the plaintiff is stronger than that of an equally credible witness who with the same opportunities testifies that he did not hear the elevator bell ring at the same time.

"Where two witnesses directly contradict each other, and the veracity of neither is impeached, the presumption of truth is in favor of the witness who swears affirmatively. You are instructed, therefore, that the positive testimony of a single witness who testifies that the bell rang on the occasion in question is entitled to more weight than that of two witnesses, equally credible, who testify negatively, that they did not hear it ring.

"Of course, you must bear in mind in applying this rule that much depends upon the circumstances, such as the opportunity of the witnesses for knowing, and the attention which they gave or which it appears to you from the evidence they probably gave, under all the circumstances shown. The mere fact that one witness testifies contrary to another does not discredit either. The credibility of all witnesses, as I said before, and the weight to be given to the testimony of each, is wholly for your consideration and determination. . . ."

With an exception hereafter noted the quoted language is substantially the same as has been repeatedly approved by this court. As good an illustration as any is *Draper v. Baker,* 61 Wis. 450, 21 N. W. 529, referred to by appellant's counsel:

"Positive testimony of a small number of witnesses that they saw or heard a given thing occur, will outweigh the negative testimony of a greater number of witnesses that they did not see or hear it, provided the witnesses are equally credible; but in connection with this instruction should be considered the relative means or opportunity of the several witnesses to see or hear the occurrence, and that it should be carefully kept in mind that it only applies when the witnesses are equally credible."

The following are but a few of the many other cases where similar language was used or approved: *Eilert v.*

*G. B. & M. R. Co.* 48 Wis. 606, 4 N. W. 769; *Pennoyer v. Allen,* 56 Wis. 502, 14 N. W. 609; *Wickham v. C. & N. W. R. Co.* 95 Wis. 23, 69 N. W. 982; *Ives v. Wis. Cent. R. Co.* 128 Wis. 357, 107 N. W. 452.

The language of the instruction, the positive testimony of a credible witness as to a particular matter is entitled to greater weight than the negative testimony of an equally credible witness as to the same matter, with a proper explanation, which was given, is not subject to criticism. It merely stated the rule in the ordinary way of phrasing it. Jones, Ev. § 898 (901); *Wickham v. C. & N. W. R. Co., supra.*

The only portion of the court's instruction challenging particular attention is this: "The presumption of truth is in favor of the witness who swears affirmatively." That must be viewed in light of the reason of the rule. The words "presumption of truth" evidently were not used with reference to the mere question of veracity; that is, as to which of the two witnesses, if either, testified falsely. That has its negative in the very limitation of the phrasing. It evidently was used with reference to the greater likelihood of the positive rather than the mere negative testimony pointing correctly to what in fact occurred, the idea being that while one cannot hear a sound which does not occur or see a thing which does not happen, it is common knowledge that there may be a sound within one's vicinity and easily within the range of his hearing or a transaction in such vicinity easily within the range of his vision, and he be entirely unconscious of it or some time thereafter fail to recollect it. So in one sense there is a presumption that the person testifying positively that he saw or heard an occurrence is right rather than one similarly situated who is only able to testify that he did not see it or did not hear it or recollect it.

So it is said in the older works on Evidence, and some of the later ones as well, the presumption is in favor of human veracity operating to support the affirmative. In *Hepburn*

*v. Citizens' Bank,* 2 La. Ann. 1007, the rule is formulated from the opinion thus: "Where two witnesses, of unimpeached veracity, contradict each other, the presumption of truth is in favor of the one who swears affirmatively." That is found to have been copied substantially *verbatim* by Mr. Jones in his valuable work on Evidence at sec. 898 (901), the language being used as another way of stating that the positive testimony of one credible witness as to a fact in issue is entitled to greater weight than the testimony of another equally credible witness, with equal opportunity for knowing the truth, that he did not hear or see or recollect as the case may be. The rule is given with both phrasings and each as a synonym for the other with appropriate illustrations.

There is good reason for use of the word "presumption," merely in the sense that, as a matter of law, all other things being equal, it being understood that whether they are so equal or not is for the jury to determine preliminary to applying the rule, positive should prevail over negative testimony. That does not give any greater dignity to the positive testimony than to merely say that as a matter of law it is to be preferred over the negative, as has often been said by this and other courts. In *Delk v. State,* 40 Tenn. 79, this language, substantially, was used: When two witnesses of equal credibility and opportunity for hearing an occurrence testify, one positively that he heard it and the other that he did not hear it, the former is entitled to prevail over the latter. Again in *Farmers' & M. Bank v. Champlain T. Co.* 23 Vt. 186, it was stated as a rule of law that in weighing contradictory evidence, other things being equal, positive preponderates over negative evidence, but in giving such rule to a jury care should be exercised to place before them the facts necessary to its proper application. Any number of like illustrations might be given.

So it will be seen that the learned court, in using the term

"presumption of truth," did not venture to depart from the phrasing of the rule commonly adopted by this court, and so repeatedly approved that it can be used by trial courts with perfect safety, carelessly, or for the mere purpose of indulging in originality.

While a trial judge, as an original matter, may be able to state a rule of law more concisely and in language more easily understood by the ordinary juror than the examples given by this court for stating the same rule, such departures are to be avoided, generally speaking, since they are quite liable to result in just the difficulty we are now dealing with. The learned circuit judge in this case must be acquitted of taking any responsibility for a new phrasing of an important rule, as he copied, word for word, from the text in Jones on Evidence, which has come to be the common handbook for trial judges in this state and well merits the distinction. The copied language was used in connection with a common statement of the rule before and again after, showing, unquestionably, that the three separate phrasings were given as meaning the same thing, as the jury in all likelihood must have understood it. That they may well have done so seems evident since some courts and two eminent text-writers are committed to that idea, as we have shown.

The foregoing is reinforced by the common meaning of the word "presumption." Lexically, in the ordinary, it means "The act of believing upon probable evidence; opinion; evidence probable but not conclusive." Webst. Dict. From the technical legal standpoint, except as provided by statute, it means inference which a reasonable person would as a rule draw from given circumstances. Such, of course, are rebuttable, being mere presumptions of fact. Again, the inferences which spring from given circumstances as matter of law which may in some cases be rebuttable and some cases not. 2 Bouv. Law Dict. One will readily ap-

ply those definitions discriminately to the word "presumption" as it was used in this case, to the effect merely that, as matter of law, positive evidence, all other things being equal, is entitled to prevail over mere negative evidence.

Notwithstanding what has been said we do not approve of use of the term which has led to this discussion. It is not commonly used. It has never been used in any other case reviewed. by this court, so far as we can discover. It being rather of an unusual way of phrasing familiar law, perhaps it is unfortunate, after giving the common method, that the uncommon one was incorporated in the late work on Evidence as in all respects reliable.

Probably the words "presumption of truth" might possibly convey a different meaning to laymen, ordinarily, than the one appropriate thereto, under the circumstances the term is used in the books and was used in the instruction. Any person of common understanding can readily comprehend the ordinary statement. To add that the presumption of truth, etc., while abstractly correct, might under some circumstances mislead. We strongly advise its use be not indulged in. However, we do not reach the conclusion that there is any probability the jury may have been misled in this case, since, as before indicated, the common phrasing of the rule was twice used in connection with the peculiar language, all as meaning the same thing.

The further supposed error lies in the rejection of several questions propounded to appellant, such as: If the bell sounded at that time would you have heard it? Was it such a sound as to be readily heard while you were in the position of pulling in your truck into the elevator? From what you know, could you have heard this bell had it rung when you were backing into the shaft? It will be observed that the questions involve mere opinions, which were as capable of being formed by the jury as the witness, since they had been put in possession of all facts as to the location of appellant

with reference to the elevator at the time in question and as to the nature of the bell signal as regards being such as to attract the attention of a person within the range occupied by appellant. On those grounds, as appears satisfactorily from the record, the evidence was rejected, and we think without harmful error. Quite certainly so because the evidence was not offered for the purpose of showing that the bell might have sounded and appellant not have heard it because of not being within hearing distance. It was offered to show that, though he was within such distance, he did not hear the bell. That he was within such distance there was no dispute. He had already testified, over and over again, that he did not hear it. So it is not perceived that the evidence would have, had it been received, added a feather's weight to the evidence already given.

Counsel for respondent invokes the benefit of his exception to a refusal of the court to submit a question embodying, literally, the language of sec. 1636$j$, Stats. (1898), to the effect that under such circumstances as the jury might have found existed in this case all elevators "shall be securely guarded and fenced." The court submitted a question, which was excepted to as not conforming strictly to the statute, of whether the entrance to the elevator was reasonably guarded. In respect thereto the jury were instructed it was incumbent on plaintiff to show that defendant did not reasonably guard the elevator entrance. No exception was taken to the charge, and none to the question, except because the wording thereof did not conform literally to the statute.

What would constitute a reasonable guarding of an elevator entrance under the circumstances was determinable with reference to the mandate of the statute that it must be securely guarded. Nothing short of that would be a reasonable guarding. The requirement of the statute, as we view the matter, was substantially covered.

Thus it seems all questions presented must be resolved

in favor of appellant. The judgment must be reversed and the cause remanded for entry of judgment in defendant's favor upon the verdict.

*By the Court.*—So ordered.

TIMLIN, J. I feel obliged to dissent. I think the order granting a new trial should be affirmed. The court below erred in charging the jury as follows:

"Where two witnesses directly contradict each other and the veracity of neither is impeached, the presumption of truth is in favor of the witness who swears affirmatively."

The circuit court thought this to be error and granted a new trial for that reason. He is now reversed and admonished that he should not use this language in charging the jury, and it is suggested that he should "phrase" his ideas as directed by this court.

These hortatory decisions lecturing the trial courts, and requiring them to clothe their ideas and their definitions in set phrases settled for them by this court, seem to me productive of confusion. When another case comes up in which the circuit court used the same or equivalent language in his charge to the jury we must do one of four things: (1) Continue these hortatory exercises; (2) pass it unnoticed; (3) approve of it; (4) declare it prejudicial error and disapprove of it and reverse the decision below. If we do the latter we are not administering the law impartially in all cases.