CITY OF MARINETTE and another, Respondents, vs. GOODRICH TRANSIT COMPANY, Appellant.

*March 11—April 8, 1913.*

*Bridges: Collision: Negligence: Liability for injury to bridge: Contributory negligence: Absence of lights prescribed by federal authorities: Questions for jury: Special verdict: Form and sufficiency: Positive and negative testimony.*

1. If the failure to maintain upon a bridge over a navigable river the lights prescribed by the federal lighthouse board did not and could not contribute to cause a collision between a vessel and such bridge, such failure will not defeat a recovery of damages for the injury to the bridge.
2. Even though it appeared that the prescribed lights were better than those maintained on the bridge, yet evidence tending to show that the steamboat ran into the bridge without giving any signal; that the captain had notice, in time to have avoided the collision, that the bridge was not open; and that in fact he had all the notice and knowledge that he would have had if the lights required by the lighthouse board had been maintained, was sufficient to warrant the jury in finding that the absence of the prescribed lights did not and could not have contributed to the collision.
3. A finding in the special verdict in such case that no want of ordinary care on the part of the plaintiffs (the cities maintaining the bridge) contributed proximately to the collision, is *held* sufficient, the jury having been instructed that they could not so find unless satisfied to a reasonable certainty

from the evidence that the absence of the prescribed lights could not in any way have contributed to the injury and no objection having been made to the form of the verdict.

4. Testimony of a bridge tender, who was on the bridge and whose duty it was to watch boats going up and down the river and to listen for the blowing of whistles, that he watched the steamboat in question coming in and listened for a signal from it; that his mind was on the whistle and he was waiting to hear it; but that no whistle was blown, was not merely negative testimony and was sufficient, as against the testimony of a number of witnesses to the contrary, to raise a jury question as to whether or not the whistle was blown.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

The city of *Menominee* in the state of Michigan, and the city of *Marinette* in the state of Wisconsin, plaintiffs, maintained the bridge in question across the Menominee river between the said cities. On the morning of July 18, 1907, at about 2:30 a. m., the steamer Carolina, owned by the defendant, collided with the bridge in question, damaging it to the extent of $3,250. There is no dispute as to the amount of the damages, and this action is brought for the recovery thereof.

The negligence charged in the complaint is in substance that the defendant failed to give warning of the approach of the steamer which collided with the bridge so that the bridge might be opened for the steamer to pass through, and that the said steamer was so negligently and carelessly managed as to run into the bridge and cause the damage complained of.

The defendant answered admitting certain allegations of the complaint and denying the material allegation respecting negligence of defendant, and also set up as a separate defense failure on the part of the plaintiffs to comply with the rules of the United States lighthouse board passed in pursuance of an act of Congress relating to lighting bridges over navigable rivers, and providing that all parties owning, occupying, or operating bridges over any navigable river shall

maintain at their own expense from sunset to sunrise throughout the year such lights on their bridges as may be required by the lighthouse board for the security of navigation; and in addition thereto all parties owning, occupying, or operating any bridge over any navigable river shall in any event maintain all lights on their bridge that may be necessary for the security of navigation. And the answer further alleged not only failure to comply with the rules of the lighthouse board, but also failure to maintain any proper lights on said bridge.

Motions for nonsuit and directed verdict in favor of the defendant were denied, and the jury returned the following verdict:

"(1) Were three blasts of the whistle on the Carolina blown in the usual place for signaling its approach to and intent to go through the bridge? A. No.

"(2) Were the red lights on top of the center of the draw, and the two lights at its end on the east side, usually maintained by the plaintiffs, burning at the time the Carolina struck the bridge? A. Yes.

"(3) Was the defendant negligent in so running the Carolina as to permit her to strike the bridge? A. Yes.

"(4) If your answer to the third question should be 'Yes,' then answer this: Was said negligence a proximate cause of the collision with and injury to the bridge? A. Yes.

"(5) If your answer to the third and fourth questions should be 'Yes,' then answer this: Did any want of ordinary care on the part of the plaintiffs contribute proximately to the collision with and injury to the bridge? A. No."

The usual motions were made after verdict for change of answers in the special verdict and for new trial, which were denied, and judgment rendered in favor of the plaintiffs, from which this appeal was taken.

*Charles E. Kremer* and *H. L. Frink,* for the appellant.

For the respondents there was a brief by *L. D. Eastman* and *John O. Miller,* and oral argument by *Mr. Eastman.*

KERWIN, J.   1. It is first insisted by counsel for appellant that the court below erred in overruling defendant's motion for nonsuit made at the close of the plaintiffs' evidence.   This contention is based mainly upon the proposition that it appeared from the plaintiffs' showing that the rules of the lighthouse board respecting lights to be maintained upon the bridge under authority of act of Congress were not complied with.   It is contended that the regulations of the lighthouse board have the force of a federal statute and must be recognized by the court as the law.   It is conceded that the lights prescribed by the lighthouse board were not maintained upon the bridge.   Under repeated decisions of the federal courts in admiralty cases it has been ruled that where such lights have not been maintained, and a collision occurs, it is incumbent upon the party in default to show that the absence of such lights not only did not but could not have caused the injury.   *Smith v. Shakopee,* 103 Fed. 240; *The Pennsylvania,* 19 Wall. 125; *Belden v. Chase,* 150 U. S. 674, 699, 14 Sup. Ct. 264; *The Martello,* 153 U. S. 64, 14 Sup. Ct. 723.   These decisions of federal courts arising on questions depending upon acts of Congress are entitled to weight with this court, if not controlling.

The case was tried in the court below upon the law as laid down in the foregoing federal decisions, as appears from the able opinion of the trial judge in the record.   As will be seen from the foregoing decisions, the federal courts have quite uniformly held to a strict adherence to the requirements of the law in relation to lights and signals, and that no exception can be made unless, as is said, "the breach of regulations could not have been a contributing cause of the disaster."   But if the default in obeying regulations be not a contributing cause, then such default will not defeat recovery.   *The Fannie,* 11 Wall. 238.

There is evidence on the part of the plaintiffs tending to show that the captain in charge of the Carolina, at the time

of the collision and for many years prior thereto, was familiar with the harbor and with the lights used on the draw; that lights were exhibited on the bridge at the time of the collision, as usual, sufficient to give warning that the bridge was not open; that at the time of the collision the night was clear, so the bridge could have been seen from the Carolina coming up the river at a distance of from 400 to 500 feet so as to observe whether the bridge was being opened; that the whistle of the Carolina was not blown as a signal to open the bridge at the proper place, and was not blown at all until immediately before the steamer struck the bridge and not in time so that the bridge could have been opened in time to avoid the collision; that the Carolina collided with the bridge and caused the injury. We think the evidence was ample to carry the case to the jury, therefore the motion for a nonsuit was properly overruled.

2. It is contended that the court erred in denying defendant's motion for a directed verdict at the close of all the evidence. In addition to the point that the absence of lights required by the lighthouse board was ground for a nonsuit, counsel for appellant further insist that upon all the evidence a verdict should have been directed for defendant, and an attempt is made to support this contention on two grounds, which will be briefly referred to.

First, it is said that several witnesses testified that the government lights were much better than those maintained on the bridge, and that the evidence shows that the absence of government lights contributed to bringing about the collision. Second, it is insisted that the evidence on the part of appellant establishes beyond controversy that the whistle on the Carolina was blown as a signal for the opening of the bridge, and that this fact is established by the positive evidence of twelve witnesses, while the evidence on the part of the respondents is negative, therefore there was not sufficient evidence upon the point to carry the question to the jury, but

that as matter of law it was established that the whistle was blown.

The first of these propositions as regards government lights we consider the more serious question, but we are convinced that there is sufficient basis in the evidence to warrant the jury in finding that the absence of such lights did not and could not have contributed to the collision. ·

True, the evidence shows that the government lights were better than those maintained on the bridge; but the evidence also tends to show that the captain in charge of the steamer discovered that the bridge was not open when 200 feet from it, and that he could stop the vessel when going at the rate of two and one-half miles an hour in a distance of 150 feet, and that the steamer was going at the rate of two and one-half miles an hour when within two or three hundred feet of the bridge; that the lookout reported to the captain when about 500 feet from the bridge that it was not open.  The mere fact that the government lights were better and would show more plainly the situation is not the important question, but whether the lights maintained upon the bridge, in connection with the captain's knowledge of the situation and the fact that he knew that the bridge was not open in time to have avoided the collision, were sufficient to warrant the jury in finding that the absence of the government lights did not and could not have contributed to the collision.  *Blanchard v. New Jersey S. B. Co.* 59 N. Y. 292; *The Wenona,* 19 Wall. 41; *The City of Washington,* 92 U. S. 31.·

Under the repeated decisions of this court, if there is any credible evidence which, if undisputed, would entitle the jury to find for the plaintiff, a verdict should not be directed for the defendant.

"The simple question is, whether the evidence in behalf of the plaintiff, had it remained undisputed, and giving it the most favorable construction it will legitimately bear, including all reasonable inferences from it, is sufficient to justify

a verdict in favor of the plaintiff." *Spensley v. Lancashire Ins. Co.* 54 Wis. 433, 11 N. W. 894.

Moreover, we have the decision of the learned trial judge overruling the motion for a directed verdict and passing upon the sufficiency of the evidence. Deference is due to his conclusions involving the sufficiency of the evidence to carry the case to the jury. *Nolan v. Kroening,* 130 Wis. 79, 109 N. W. 963; *Murdock v. B., D. L. & J. R. Co.* 147 Wis. 100, 132 N. W. 979; *McCune v. Badger,* 126 Wis. 186, 105 N. W. 667; *Slam v. L. S. T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30.

A very vigorous contention is made by counsel for appellant to the point that upon the showing made the jury could not find that the absence of government lights on the bridge in accordance with the regulations of the lighthouse board did not and could not contribute to the collision. We cannot agree with counsel in this position. Under the well established rule of this court, we think the evidence in favor of the plaintiffs, giving it the most favorable construction it will legitimately bear, including all reasonable inferences from it, is sufficient to support a verdict for the plaintiffs upon this question.

The jury were entitled to find on the evidence that the Carolina ran into the bridge without giving any signal, and that the captain had notice that the bridge was not open in time to have avoided the collision, and in fact had all the notice and knowledge that he would have had had the lights required by the lighthouse board been on the bridge. Under such circumstances it is clear that the motion to direct a verdict for defendant was properly overruled. *Wis. F. L. Co. v. Bullard,* 119 Wis. 320, 96 N. W. 833; *Goldman v. Fidelity & D. Co.* 125 Wis. 390, 104 N. W. 80; *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425; *Ellison v. C. & N. W. R. Co.* 143 Wis. 603, 128 N. W. 428; *Kersten v. Weichman,* 135 Wis. 1, 114 N. W. 499; *Zentner v. Oshkosh G. L. Co.* 126 Wis. 196, 105 N. W. 911.

It is further insisted by counsel for appellant that there is no credible evidence before this court sustaining the proposition that the whistle was not blown. Upon this point we think counsel is in error, and we need not repeat the rule of this court before stated on the question of sufficiency of the evidence to carry the case to the jury. The contention of appellant under this head is that respondents' testimony is negative merely, therefore not sufficient to raise a jury question. True, a large number of witnesses who were in position to know testified positively that the whistle was blown, and there is considerable testimony negative in its character on the part of the respondents to the effect that the whistle did not blow. However, there is some testimony on the part of the respondents that cannot be regarded as negative testimony. Edward Berg, who was bridge tender on the night in question, and whose duty it was to watch boats going up and down the river and listen for the blowing of whistles and attend to the lights on the bridge, testified that he was expecting the Carolina in that night, and saw it in the bay just outside the lighthouse and watched it coming in; that he was watching for the whistle, watching for a signal from the Carolina, and watched it until it came up to the bridge and ran into it, and did not hear the boat blow any whistle. He further testified that he never thought the boat was going through the draw, because no whistle was blown.

"I can't tell how fast he was going, as my mind was on the whistle. I was waiting to hear the whistle. . . . If he had been going fast I don't think it would have made any impression in my mind, as my mind was on the whistle. I did not release the lever and unlock the bridge because he did not blow for it, and I did not know he wanted the bridge open until he hit it."

The testimony of Berg, under the well established doctrine of this court, was sufficient to raise a jury question as to whether or not the whistle was blown. *Urbanek v. C., M. & St. P. R. Co.* 47 Wis. 59, 65, 1 N. W. 464; *Joannes v. Mil-*

*lerd,* 90 Wis. 68, 62 N. W. 916. The evidence of Berg on the question referred to, though negative in form, was really affirmative in essence. *Joannes v. Millerd, supra; Urbanek v. C., M. & St. P. R. Co., supra; Sobey v. Thomas,* 39 Wis. 317; *Shekey v. Eldredge,* 71 Wis. 538, 37 N. W. 820; *Steinhofel v. C., M. & St. P. R. Co.* 92 Wis. 123, 65 N. W. 852; *Brown v. Milwaukee E. R. & L. Co.* 148 Wis. 98, 133 N. W. 589. The case last cited is especially in point on the question now under consideration. The point was whether a gong on a street car was sounded. The plaintiff testified that he was listening for the gong and did not hear it. The motorman testified that he sounded the gong. The question arose on the charge to the jury, and the court held that the evidence was not purely negative, it appearing that there was nothing to interfere with plaintiff's hearing, and that he was in a position where he could have heard the gong if sounded.

We are convinced that the jury were entitled to find from the evidence that the whistle was not blown.

The jury answered the fifth question in the negative, thereby finding that there was no want of ordinary care on the part of the plaintiffs which contributed proximately to the collision with and injury to the bridge. On this question the court below charged the jury, in effect, that the absence of the lights required by the lighthouse board raised a presumption of negligence, and that the law required the jury to find that the plaintiffs were guilty of contributory negligence because they did not have those lights, unless the testimony in the case satisfied the jury that the absence of such lights not only might not but could not in any way have contributed to the collision, and that unless they were satisfied to a reasonable certainty from the evidence that the absence of lights which the law required could not have contributed to the collision, they must answer the fifth question in the affirmative. No objection was made to the form of the verdict and no request made to submit any additional questions, and

no exception was taken to the charge. We are satisfied that the answers to the questions submitted in the special verdict are supported by the evidence, and that no error was committed upon the trial.

*By the Court.*—The judgment of the court below is affirmed.